IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ERIC O'BRIEN JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 5:14-CV-3-CAR-CHW |
| | : | 42 U.S.C. § 1983 |
| BRIAN OWENS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____

**ORDER**

Plaintiff Eric O. Johnson has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 while confined at Hancock State Prison. Plaintiff's motion to proceed *in forma pauperis* was granted and Plaintiff was ordered to supplement his complaint. (Doc. 5.) Plaintiff thereafter filed his supplemental complaint on February 21, 2014. (Doc. 6.) As explained below, the claims in Plaintiff's Supplemental Complaint are subject to preliminary review under 28 U.S.C. § 1915A.

In accordance with the Prison Litigation Reform Act, Plaintiff's custodian is hereby directed to remit to the Clerk of this Court each month twenty percent (20%) of the preceding month's income credited to Plaintiff's inmate account until the $350.00 filing fee has been paid in full, provided the amount in the account exceeds $10.00. Transfers from Plaintiff's account shall continue until the entire filing fee has been collected, notwithstanding the earlier dismissal of Plaintiff's lawsuit.

If Plaintiff is hereafter released from custody, he shall remain obligated to pay any remaining balance due of the above filing fee; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due by any means permitted by law is hereby authorized in the event Plaintiff fails to remit payments.

## DISCUSSION

### I. Standard of Review

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the Complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Even so, a district court must dismiss a prisoner complaint after the initial review if: (1) it is "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); *see also* 28 U.S.C. §1915(e)(2)(B) (requiring the same of pleadings filed parties proceeding *in forma pauperis*).

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint is thus properly

dismissed by the district court *sua sponte* if it is found to be "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

When determining whether a complaint fails to state a claim, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissal under Rule 12(b)(6) apply to § 1915(e)(2)(b)(ii)."). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, a complaint should not be dismissed "simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995).

If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming court's dismissal of a §1983 complaint because factual allegations were insufficient to support alleged constitutional violation). *See also* 28 U.S.C. 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in § 1915A "shall" be dismissed on preliminary review).

## II.   Plaintiff's Claims

In his Complaint, Plaintiff makes several disjointed claims against the Defendants. From what the court is able to decipher, Plaintiff sues: Georgia Department of Corrections ("GDOC") Commissioner Brian Owens; GDOC Regional Director Cynthia Nelson; GDOC Field Operator Rick Jacobs; Hancock State Prison ("HSP") Warden Dennis Brown; HSP Deputy Warden George Ivey; HSP Deputy Warden A. Hill; HSP Unit Manager Ransom; HSP Chief Counselor Tamakia Mahoney; HSP Counselor Mosely, and HSP Lieutenant Pleas. (Compl. 3; Doc. 1.)   Plaintiff's original complaint was filed on December

In his original Complaint, Plaintiff alleges that upon his entry into Hancock State Prison on October 10, 2013, Defendant Ivey refused him medical attention.   (Compl. 4.)

On October 15, 2013, Plaintiff alleges he received a "segregation hearing" where he was put into Tier II administrative segregation without further explanation.   (*Id.*) Plaintiff's complaint acknowledges that Warden Hill placed him in segregation for the "welfare of the institution."   (*Id.*)

On November 13, 2013, Plaintiff alleges that several C.E.R.T. Team[1] members came into his cell and removed personal property, including hygiene items. Plaintiff contends that several minutes later an appeal form, which allows Plaintiff to appeal his placement in segregation, was slid under his cell door. (*Id.*) Plaintiff filed his appeal on November 14, 2013. (*Id.*)

On December 16, 2013, Plaintiff states that he spoke with Defendant GDOC Regional Director Cynthia Nelson on her visit to the Prison. (*Id.*) Plaintiff alleges he told her he had not received a response to his appeal. Plaintiff appears to believe that Defendant Nelson denied his appeal due to a prior encounter while he was at Baldwin State Prison.[2] Plaintiff again appealed the placement decision which was denied on December 23, 2013.[3] (*Id.* at 5.) Thus, Plaintiff contends that Defendant Mosely conspired with Defendant Nelson to deny his appeal. (*Id.*)

Plaintiff further alleges that he was placed into the Tier II Administrative Segregation cell in retaliation for lawsuits he previously filed against Macon State Prison Warden Gregory McLaughlin. (*Id.*) Thus, Plaintiff contends that his rights to be free of

---

[1] The C.E.R.T. Team is the Correctional Emergency Response Team which is made up of POST certified correctional officers who mobilize upon command at Georgia State Prisons to restore law and order within the facilities and assist all departmental staff with daily organizations and operations of the facilities. *See* www.dcor.state.ga.us

[2] Plaintiff avers that Defendant Nelson stated "you remember the trip to Baldwin and my Bandit." Later in his complaint, Plaintiff attempted to clarify this statement by stating that "Defendant Nelson instructed the staff under her authority to deny Plaintiff's appeal due to an alleged incident where a bandit, which is a security device, was lost" while he was incarcerated at Baldwin State Prison. (Compl. 12.) Thereafter, in his Supplemental Complaint, Plaintiff states that Nelson attempted to justify his placement in Tier II by stating "you remember my bandit when you went to Baldwin State Prison." (Suppl. Compl. 2.)

[3] On the appeal form under the denial, additional writing stating "[s]ee documentation dated December 23, 2013, RE: Bandit" was written. (*Id.*)

cruel and unusual punishment, as well as his due process rights, have been violated. As such, he seeks a temporary and permanent injunction requiring that he be released into the general population of the prison and that he receive nominal, compensatory, and punitive damages from each of the named defendants. (*Id.* at 6, 17.)

In his supplemental complaint, Plaintiff makes more detailed allegations against each of the defendants. (Suppl. Compl. 1; Doc. 6.) He contends that he is still being housed in the Tier II administrative segregation unit, wherein he is being deprived of "basic human need[s]." (Suppl. Compl. 3.) Plaintiff further contends that since his original complaint was filed, he was put into isolation, "sprayed with a chemical agent," and had his head shaved without cause. (*Id.*) Plaintiff alleges deprivation of personal property, denial of "outside recreation," denial of medical treatment, retaliation, excessive force, and denial of due process regarding his housing status. (*Id.*)

### III. Analysis of Claims

#### A. *Supervisory Liability*

Plaintiff fails to allege any specific harms arising from the actions of Defendants Commissioner Brian Owens or HSP Warden Dennis Brown. It is apparent from his allegations that these Defendants are named solely because of their supervisory positions. "While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how *overt acts* of the defendant caused a legal wrong." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citation omitted) (emphasis added). Defendants Owens and Brown cannot be liable solely by virtue of their supervisory positions. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999). To

state a claim against a supervisory official, Plaintiff must allege that the supervisor "personally participate[d] in the alleged unconstitutional conduct or . . . there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F. 3d 1352, 1360 (11th Cir. 2003). Plaintiff's complaint makes no such allegations or connections in this case. Plaintiff's attempts to connect Defendants Owens and Brown to the acts in question are no more than vague and conclusory statements. Therefore, it is **RECOMMENDED** that Plaintiff's claims against Commissioner Owens and Warden Brown be dismissed. Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

    **B.**    *Due Process Claims*

Plaintiff alleges that he was denied a segregation hearing upon his placement into the Tier II segregation program, which Plaintiff acknowledges was done for the "welfare of the institution." However, Plaintiff acknowledges that he **was** given a "segregation hearing on October 15, 2013. (Compl. 4.) (emphasis added.) Plaintiff claims he then tried to appeal the placement decision. Plaintiff states that he was thereafter moved from a "Special Management Unit Cell" to Administrative Segregation on October 31, 2013. (Suppl. Compl. 1.) He contends that on November 13, 2013, his cell was stripped of his personal property and he was placed into Tier II, the Long Term Administrative Segregation Unit. (*Id.*)

7

To the extent Plaintiff has attempted to state a due process claim based on his placement in the Tier II administrative segregation unit, these allegations also do not describe violations of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. Prisoners have no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison. *See Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir.2008) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate); *Moody v. Daggett*, 429 U.S. 78, 87 (1976) (prison officials have full discretion to control conditions of confinement, including prisoner classification) (citing 18 U.S.C. § 4081).

For the same reason, any claims Plaintiff has with regard to a due process violation because the Defendants failed to respond to his appeal and grievances must fail. (Compl. 4.) The Eleventh Circuit has agreed with other circuit courts in finding that a prisoner does not have a constitutionally-protected liberty interest to an inmate grievance procedure. *Thomas v. Warner,* 237 F. App'x 435, **2 (11th Cir. 2007) (citations omitted). "Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim." *Id.* Because Plaintiff's due process allegations fail to state a claim, it is **RECOMMENDED** that they be dismissed. Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

### C. *Cruel and Unusual Punishment*

Plaintiff contends that Defendant Deputy Warden of Security Ivey and Defendant Tier II Unit Manager Ransom subjected him to cruel and unusual punishment. Specifically, Plaintiff alleges that Defendant Ivey instructed his staff to assault Plaintiff on two occasions. (Suppl. Compl. 5.) On one of these occasions, Plaintiff contends that his head was forcibly shaved on January 24, 2014, wherein he was struck with the clippers and his "head was busted." (*Id.*) Plaintiff also contends that Defendant Ivey refused to let him be seen by medical personnel upon his entry in Hancock State Prison, spoke disrespectfully to him, and took away his blankets and mat as punishment for asking questions. (*Id.*)

Plaintiff also claims Defendant Ransom refused to allow him daily outside recreation, and removed or failed to provide him with a skull cap, long johns, or sweatshirts during the winter. (Suppl. Compl. 6.) Plaintiff further alleges, without elaboration, that Defendants Owens, Nelson, Jacobs, Ivey, Hill, Ransom, Pleas, Mahoney, and Mosely have denied him his right to purchase "personal hygiene items." (*Id.*)

A plaintiff who challenges the conditions of his confinement under the standard set by the Eighth Amendment must prove that the conditions complained of constitute "cruel and unusual punishment." *U.S.C.A Const. Amend 8.* "The Eighth Amendment, applicable to the states through the Fourteenth Amendment, forbids cruel and unusual punishments." *Dixon v. Toole*, 225 F. App'x 797, 798 (11th Cir. 2007) (citations omitted). It "governs the treatment a prisoner receives in prison and the conditions under

9

which he is confined." *Farrow v. West*, 320 F.2d 1235, 1242 (11th Cir. 2003) (internal quotation marks and citation omitted). "However, [n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Id.* (internal quotation marks and citation omitted) (alteration in original).

In this case, Plaintiff claims that he was denied access to medical care upon entering the prison, access to daily outside recreation, and access to cold weather clothing properly fall under the Eighth Amendment's prohibition against cruel and unusual punishment. A viable Eighth Amendment claim has both a subjective and an objective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires proof that the officials acted with subjective deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The objective component requires proof that the deprivation was sufficiently serious. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). A prison official may be held liable under the Eighth Amendment only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The Supreme Court has held that prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Court further held that the Constitution "does not mandate comfortable prisons." *Id.* at 349. Prison officials, however, "must provide humane conditions of confinement; must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the

inmates.'" *Farmer* at 832 (citations and quotation omitted). "A plaintiff seeking to show unconstitutional conditions must clear a 'high bar' by demonstrating 'extreme deprivations.'" *Ellis v. Pierce Cnty., GA*, 415 F. App'x 215 *1 (11th Cir. Feb. 24, 2011) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004)).

###### i. Outdoor Recreation

As to his claims of the denial of daily recreation, although courts have held that the *long-term denial* of outdoor exercise is cruel and unusual punishment in violation of the Eighth Amendment[4], there is no allegation in this case that Plaintiff was denied outdoor recreation for any length of time. Plaintiff only alleges that he is denied "daily outdoor exercise" and admits that he gets "60 minutes on Tuesday and Thursday on average for brief exercise and shower periods." (Compl. 11.) This claim thus fails to trigger a viable "conditions of confinement" claim under the Eighth Amendment and it is **RECOMMENDED** that Plaintiff's claim that he was denied daily recreation time be dismissed. Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

###### ii. Deprivation of Property

Plaintiff claims that he was denied the ability to purchase hygiene products, was not provided "a skull cap, long john-thermal sets, [or] sweatshirts," and had his mat and blanket taken, must also fail. Although Plaintiff complains that he has been deprived of

---

[4] *See, e.g., Rhem v. Malcolm*, 371 F.Supp. 594, 627 (S.D.N.Y.1974); *Sinclair v. Henderson,* 331 F.Supp. 1123, 1131 (E.D.La.1971).

11

these things, Plaintiff has wholly failed to allege that he has suffered any harm from not being allowed to purchase hygiene items, by having his mat and blanket removed, and by not being provided a skull cap, long johns or a sweatshirt. "While an inmate need not await a tragic event before seeking relief he must at the very least show that a condition of his confinement pose[s] an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby*, 379 F. 3d 1278, 1289 (11th Cir. 2004) (citations and quotations omitted). For the above stated reasons, Plaintiff has failed to make a sufficient showing that Defendant's actions constituted cruel and unusual punishment. Thus, Plaintiff has failed to satisfy the subjective prong of an Eighth Amendment claim, and, as such, Plaintiff has failed to state a cognizable claim that those rights were violated. Therefore, it is **RECOMMENDED** that Plaintiff's claims that he was denied the ability to purchase hygiene items, denied specific clothing, and deprived of his mat and blanket be dismissed. Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

   iii. Medical Care

  Plaintiff's claims that he was denied to right to see medical care upon his entry to Hancock State Prison (Compl. 4, 10) are also without merit. As stated above, prison officials must provide adequate medical care to inmates. *Farmer,* 511 U.S. at 832. However, to state an Eighth Amendment claim for inadequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). These allegations

must satisfy both an objective and subjective component.  *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002).  Under the first component, a prisoner must set forth evidence of an "objectively serious medical" need that, if left unattended, poses a substantial risk of serious harm.  *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).  A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.  *Hill*, 40 F.3d at 1187.  The prisoner must then demonstrate that a prison official had subjective knowledge of the risk of serious harm and disregarded that risk.  *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).

Plaintiff has failed to show facts sufficient to prove such a claim.  Plaintiff has not shown that he had any "objectively serious medical" need upon his entry into Hancock State Prison.  Plaintiff merely contends he was "refused medical attention upon arrival at the prison." (Compl. 4.)  Plaintiff, therefore, cannot satisfy the objective prong of the analysis for a claim of deliberate indifference.  Therefore, it is **RECOMMENDED** that Plaintiff's claims that he was denied adequate medical care be dismissed.  Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order.  *See* 28 U.S.C. § 636(b)(1).

> iv.   *Excessive Force*

To the extent that Plaintiff has alleged claims of excessive force against any of the Defendants from being sprayed with a chemical agent or receiving an injury to his head

13

when his head was shaved without his consent (Suppl. Compl. 3, 4), Plaintiff's claims are without merit.  The Eighth Amendment's ban on cruel and unusual punishment prohibits "the unnecessary and wanton infliction of pain [and] the imposition of pain totally without penological justification." *Evans v. Dugger*, 908 F.2d 801, 803 (11th Cir.1990); *see also McReynolds v. Ala. Dep't of Youth Servs.*, 204 F. App'x 819, 821-22 (11th Cir. 2006); *Lee v. Griner*, 188 F. App'x 877, 878 (11th Cir. 2006); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). The Supreme Court recently clarified that the relevant inquiry is "not whether a certain quantum of injury was sustained, but rather, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks and citation omitted). The Court stated that injury and force are "only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

The factors to be considered in ascertaining whether force was used "maliciously and sadistically to cause harm" include: "(1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response." *Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir.1999)).

Even construing the complaint liberally in favor of Plaintiff, the Court finds that Plaintiff has not alleged any facts suggesting that the Defendants sprayed him with a chemical agent or injured his head with an electric razor "maliciously and sadistically to cause harm." Although it is unfortunate that Plaintiff's head was injured by the clippers when it was shaved, the act in itself does not rise to the level of a constitutional violation. The Court thus finds that Plaintiff has failed to state a valid claim for excessive force against any and all of the Defendants. As such, it is **RECOMMENDED** that any excessive force claims Plaintiff may have raised be dismissed. Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

   **D.**   *Retaliation Claim*s

In his original and supplemental complaint, Plaintiff claims that he was retaliated against by Defendants Nelson and Ivey because of lawsuits he previously filed against Macon State Prison Warden Gregory McLaughlin. (Compl. 13, Suppl. Compl. 5.) Plaintiff further contends that he is subjected to physical violence or corporal punishment for exercising his rights to seek redress through the grievance system by Defendants Ivey, Pleas, Ransom, Hill, and Nelson. (Compl. at 15, 16.)

 A prisoner "is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir.2008) (letter to warden "constituted a protected exercise of his free speech rights"); *Farrow v. Wes*t, 320 F.3d

15

1235, 1248 (11th Cir.2003). A prisoner may thus state a First Amendment claim by alleging (1) that he complained about the conditions of his confinement, (2) that he was subsequently punished by prison officials because he made this complaint, and (3) that the consequence he suffered was severe enough to likely deter a person of ordinary firmness from making future complaints. *Id.* Construing Plaintiff's original and supplemental complaints liberally, it is found that Plaintiff has alleged a colorable claim for retaliation against Defendants Nelson, Ivey, Hill, Pleas, and Ransom.

## ORDER OF SERVICE

It is hereby **ORDERED** that service be made on Defendants Nelson, Ivey, Hill, Ransom, and Pleas solely as to Plaintiff's retaliation claims. The Defendants shall file an Answer or such other response as may be appropriate under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall, at all times, keep the clerk of this court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

## DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil

Procedure for failure to prosecute. Defendant is advised that he is expected to diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, DISCOVERY AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties

are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  <u>except with written permission of the court first obtained</u>, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests**

**for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

**SO ORDERED**, this 9th day of April, 2014.

                                              s/ Charles H. Weigle
                                              Charles H. Weigle
                                              United States Magistrate Judge